and we'll begin with oral argument from Mr. Tietz. We're going to move now to case number two, 21-2753, United States v. Rickie Foy, and we'll begin with oral argument from Mr. Tietz. Thank you, Your Honors. May it please the Court. Jonathan Tietz of Perkins Coie for Appellant Mr. Rickie Foy. Your Honors, this case is about whether a conspiracy to commit bank theft by stealing more than $1,000 requires intent to steal $1,000. The district court below said no, and the government hasn't argued on appeal and didn't argue below that it had shown that intent. That merits acquittal. There's three broad issues in this case, intent, the legal standard for intent, sufficiency as to a conspiracy to steal money, and sentencing factors. I'd like to start with intent. At bottom, conspiracy is a specific intent offense, and the felony conspiracy statute that Mr. Foy was charged under, 371B, requires a conspiracy to commit an underlying felony. That underlying felony in the indictment here was 2113B, which is felony bank theft, to take and carry away with intent to steal money exceeding $1,000. And so to prove a conspiracy, to prove an agreement that included facts that met all the elements of that offense, requires proving intent to steal more than $1,000. Furthermore, that $1,000 requirement in the underlying statute is an element of the offense. It's not a jurisdictional consideration, and it's not a sentencing factor. They're two categories that have at times been carved out from mens rea requirements in criminal statutes. Mr. Teets, I want to move you to the second point. Sure. On that second point, how much does the fact that the video of the events not include audio, how much does that factor into your second argument? It factors in somewhat in that audio would certainly provide more context for whether there was an agreement and direction or not, but it isn't necessary to that conclusion. It wouldn't be realistic to require that only a video with audio could show a conspiracy, but certainly where you have a lack of audio, you could have that made up for by visual detail, by more knowledge of relationships between co-conspirators, by more information about how people showed up to the scene, what they were doing beforehand, how much time and energy they invested, or the like. I want to piggyback on one of the statements you made, individuals showing up at the scene. Given the third argument with regard to when this occurred and the social milieu that it's happening in, if there is this riotous type circumstance, individuals walking along the street could have come across this circumstance, and if they did, it's difficult to see an agreement. Is that part of what the argument is here? Certainly. The district court itself said this was opportunistic. This was at most an eight-minute conspiracy. Appendix 296 said opportunistic. It said this was an eight-minute conspiracy, and we don't have any idea from the evidence that everyone came here together. All we know is that in the government's version of events, there was chaos and rioting, and so people just showed up. Ricky Foy in a bright orange construction vest bringing to the scene. So, yes, certainly, Your Honor, the fact that this context was that of riots and a spontaneous gathering makes it more difficult to have inferred an agreement to specifically steal money, much less money more than $1,000. Can I take you back to the statutory? Yes. Real quick. Can a district court, in your view, accept a guilty plea, hypothetically, from a defendant who says, yep, I met a group of people, and what we were going to do is we were going to go try to break into the ATM and get money. And the question is put to the defendant by the district judge, how much were you hoping to get? I don't know. I don't know what was in it. We were trying to get what we could get. Can the district court accept that guilty plea? Three points on that, Your Honor. One, I would say by itself, no, not necessarily. But it might be that the intent requirement could include a recklessness standard or an inferring that, oh, I don't know, means I'm going for a payday and that you could infer from other facts on the indictment. If the district court judge says, what do you mean you don't know? I don't know. I don't know how much was in there. I just hoped to get a lot of money. Then I would say no. In that case, you could not on these facts. You couldn't accept the guilty plea to the felony conspiracy. You could certainly accept the guilty plea to a misdemeanor conspiracy, a misdemeanor conspiracy to commit the underlying misdemeanor offense, which is a different offense. You think that conclusion is consistent with current law? I believe it is. In this case, interestingly, there was a guilty plea or someone in this case got a misdemeanor and there was a guilty plea entered for that. My understanding is that the felony in this case was dismissed and that a separate set of facts were pleaded to for the misdemeanor that fit. That was also a conspiracy to commit against the United States, but it was a liquor violation. But it was a different set of facts. It wasn't, you know, I don't know as to the amount of money. Yeah, okay, because I'm envisioning a guilty plea where there's a stipulated element that, well, yeah, you not only did try to get into the ATM, you got into the ATM and you made off with $22,000. Oh, for a completed offense. But when it comes to the questions of the defendant about his intent, he says, well, I don't know that I had a specific intent. I had no idea how much was in there. I just hoped we'd get a lot of money. Well, in such a case where you have a consummated event where you've taken away money and it's, you know, a bag of money, it would be very inconsistent with those facts to say, oh, I had no idea what was in there. That would simply be unrealistic, and so accepting— Why? Why not true? You say defenses. I don't have any idea. You know, we try to hit the thing during the day thinking there might be cash in there. We try not to do it at night thinking it might be empty because of the ATM transactions. I don't know. We're just trying to hit it and walk away with as much as we can. My intent's no more specific than that, Your Honor. Well, the point you just said about as much as we can, as much as we can coupled with the identification of what you actually took away would suffice for more than $1,000 if the amount you took away was itself more than $1,000. Okay, yeah, I don't mean to sidetrack you on it, but the reason I'm asking is just the practical import of the argument. I totally get it on a statutory basis, what you're saying, but I'm not sure it aligns with the laws we sit here today. I want to take you to the sentencing point. Obviously, you're making the point that all of the protests that were happening at that time can't be visited upon this defendant, your client. It looks like the government pushes back and says, wait a minute, we've got a testifying officer who's from this district who talked about what was happening there in conjunction with the temporal proximity. So you've got a geographical proximity component because you have an officer testifying that it's in that general area. Yes. And then you've got the temporal proximity of it being a few days after the protest started. What's your response to that? So two points, Your Honor. One, on the geographic component, Officer Nemec's testimony on this point at Appendix 86 is that there was rioting and looting going on in the city of Chicago and the 7th District generally. That's very broad geographically. I mean, there was rioting and looting going on across the entire country, but that testimony even is very broad. And a temporal is within a week. That connection alone effectively is no more linkage than any property crime happening in Chicago within that week or that summer anyway. And so that's more of an across-the-board sentencing enhancement than speaking to specific deterrence or making a link that Mr. Foy, more importantly, was taking advantage of any riots or cover or civil unrest, made more salient by the fact that he was wearing an orange construction vest in the middle of the daylight. Do you want to reserve the rest of your time? Yes. Very good. We'll now move to Mr. Villapando. Good morning, and may it please the Court. Ramon Villapando on behalf of the United States. The government asked the Court to affirm the defendant's conviction and sentence. Starting off with the first issue, the issue of the mens rea, the district court applied the correct mens rea requirement in finding the defendant guilty of conspiracy to commit bank theft. The bottom line is that the intent requirement, the mens rea requirement, required the government to prove in agreement with an intent to steal or purloin. It's well established in this circuit that the mens rea requirement for a conspiracy offense is no greater than the mens rea requirement for the underlying substantive offense. And here, the underlying substantive offense was bank theft. And we have a statute that we're dealing with and the Court has to interpret. And the statute sets out the intent requirement in a separate clause with intent to steal or purloin, and that modifies the two verbs that precede it, the taking and the carrying away. The taking and carrying away of property, of bank property, happens every day in this country. What makes it criminal is the intent to steal or purloin. That's what makes it criminal, and that's what the statute criminalizes. And that's recognized by the pattern during instructions, this circuit's pattern during instructions, which are presumed to accurately state the law, Your Honor. And this statutory structure makes sense. It doesn't require a defendant to know the amount of money they're trying to steal. It requires an intent to steal or purloin. And it's like, it's analogous to the FDIC insurance requirement, which is another element that the government had to prove beyond a reasonable doubt. It doesn't go to the wrongfulness, to the illegality of the conduct. So in that regard, you know, there's no dispute here that the mens rea requirement extends to the FDIC insurance requirement, Your Honor. And the statutory structure is comparable to other statutes in federal criminal law where there are different statutory penalties depending on various facts that a defendant does not need to know about. One example would be in the drug context where, you know, one kilogram of marijuana is different than one kilogram of fentanyl, and a defendant does not need to know that fact to be subjected to higher statutory penalties. The gun laws provide another example in the 924C context, where if that offense results in someone's death, that then triggers higher statutory penalties, Your Honor. And I could go on with other examples, but I think that the point is clear. A person does not need to know of every fact that triggers increased statutory penalties. So the bottom line here is that bank theft requires an intent to steal a cologne, and conspiracy to commit bank theft does not require anything more. Turning to the sufficiency of the evidence at issue, the facts drawn in favor of the government, as they should be on appeal, provide more than enough for a reasonable fact finder, for a reasonable jury, for a reasonable judge to have found the defendant guilty of conspiracy to commit bank theft. The question was raised about the issue of the audio. You know, actions speak louder than words, and a picture, you know, size of 1,000 were just, well, Your Honor, I'm messing up the statement there, Your Honor, but you can tell that what they were doing out there is very clear. They were out there working together, conspiring to steal the money in the ATM, and as the district court recognized, there's no misconstruing or mischaracterizing what was happening that day, and it's captured in a great deal of detail in that video that we've included some of the images taken from that video in our brief, and they unmistakably show conspiracy to commit bank theft, Your Honor. Is there a conceptual tension between the idea of public unrest, riotous conditions where individuals are moving all around, and a short period of time where there's allegedly an agreement? I don't think there's tension there, Your Honor. I think they're certainly related, and I can jump to the sentencing issue, Your Honor, but they were out there trying to take advantage of the civil unrest. They were out there in the middle of Chicago during daylight hours trying to steal money from an ATM, and they picked the ATM for a reason because they thought there was a lot of money in there, and then they were right. It was stipulated over $190,000 in cash was in the ATM. So, you know, just briefly addressing the sentencing issue, Your Honor, there was – this is not – the record here clearly supports the district court considering the nexus between the civil unrest and the offense here in applying the 3553A factors. The PSR was adopted subject to two changes that are not at issue at this appeal, and paragraph 5 of the PSR incorporates the government's version of the offense which described the civil unrest in the case and properly contextualized the offense within the broader context of the civil unrest. There was no dispute about that nexus. The defendant affirmatively relied upon that nexus in making argument at sentencing. So the government's position on appeal is that that issue has been waived or at minimum forfeited, and the district court here did not err, let alone plainly so, in considering the civil unrest in the 3553A factors and considering it in a measured and individualized assessment of the 3553A factors and then imposing a guideline sentence in this case, Your Honor. So unless the court has any further questions, the government would ask the court to affirm the conviction and sentence in this case. Thank you. Thank you. We're going to move now back, Mr. Tietz, to you for rebuttal. Thank you, Your Honor. Just a few points. The first – the government brought up this point that Fiola and Zarattini say the mens rea is no greater for a conspiracy than it is for the underlying offense. To the extent that Zarattini has been cited for that proposition or employed, that's only been for jurisdictional facts. And that's what Fiola itself was about. It was about, one, a knowledge requirement, two, about jurisdictional facts, and three, the court in Fiola was specifically rejecting a line of cases out of the Second Circuit, the Crimmins line, that required an anti-federal intent for a conspiracy even when there was no dispute that the underlying crime didn't require that mens rea. So Fiola and Zarattini have not been employed to read out an element that's a substantive element of the offense, nor has the government cited a case that has not required showing of a substantive element of the offense for the underlying offense itself. The second point is that the government mentions some of the gun law and death statutes. That wasn't briefed. We'd be happy to address it in supplemental briefing, but it wasn't before us in the briefing. And then the third thing is that the government says there's no dispute that there was a nexus here. And I guess on that point, nexus is a question of abstraction. In a very broad sense, as Your Honor mentioned, there was rioting and looting at the same time, and in the same city. But that's different from the kind of nexus that has led to waiver in other cases, which is affirmatively relying on the same information, the same spreadsheet calculations, for instance. And here Mr. Foy noted in replying to the government's argument, yes, even if everything you say is true, there were riots going on. It's not like there was a ton of time here to have gotten a lot. This was also addressed to an issue that never percolated to the court. It was an intended loss issue in sentencing that got mooted out, and the parties agreed that actual loss should be the loss measure. And if the Court has no further questions, we would ask that you reverse Mr. Foy's conviction or in the alternative remand for a re-sentence. Thank you, Mr. Teets. Thank you, Mr. Villalpando. Your affirm was appointed. Thank you, Mr. Teets. Thank you, Mr. Skelton. We appreciate all the time, effort, resources that your firm put into representing Mr. Foy in this case. And thanks as well to the government. The case will be taken into advisement.